IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

| | | |
|---|---|---|
| MANAGEMENT SOLUTIONS & SYSTEMS, INCORPORATED, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07-7C |
| | ) | (Judge Braden) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Defendant, the United States, respectfully submits the following brief in opposition to the motion for a preliminary injunction filed by plaintiff, Management Solutions & Systems, Inc. ("MSSI").

**STATEMENT OF FACTS**

This case involves the modification of a competitively awarded contract for telephone help desk services. On September 28, 2005, the Department of Housing and Urban Development ("HUD") awarded a Small Business Administration ("SBA") Section 8(a) contract to Creative Computing Solutions, Inc. ("CCSI"). A.R. 12-42.[1] This contract, No. C-DEN-02014 ("Contract"), called for CCSI to provide help desk services for HUD's Real Estate Assessment Center. A.R. 13.

On December 1, 2006, HUD modified the Contract by adding the help desk for HUD's Public and Indian Information Center ("PIC") to the services to be provided by CCSI. A.R. 77-95. SBA approved the modification. A.R. 96.

[1]"A.R." refers to the administrative record that is being filed in this case.

At the time of the modification, MSSI was responsible for serving the PIC help desk, pursuant to separate contract and a task order that expired on December 31, 2006. A.R. 49-76. On December 1, 2006, HUD asked MSSI to implement a transition plan, pursuant to its contract with HUD. A.R. 3. MSSI refused to participate in the transition to CCSI, and advised HUD in an e-mail dated December 6, 2006, that it would seek legal relief instead. Id.

MSSI filed a protest with the Government Accountability Office ("GAO") on or about December 6, 2006. Compl. ¶ 11. GAO is expected to rule on or before March 16, 2007. Id.

On December 28, 2006, HUD's director of contracting, Keith W. Surber, made determinations and findings concerning the automatic stay of the Competition in Contracting Act ("CICA"). A.R. 1-6. Mr. Surber found that the CICA stay is not applicable to MSSI's protest of a contract modification. A.R. 2. Mr. Surber further found, in the alternative, that if the CICA stay is applicable, then an override of the stay is in the best interests of the United States. Id.

## ARGUMENT

### I. The CICA Automatic Stay Does Not Apply To Modifications Of An Existing Contract That Do Not Constitute A Cardinal Change

The Competition in Contracting Act's automatic stay provision does not apply to situations like this one, in which an agency has modified an existing, competitively awarded contract without making a cardinal change to that contract. MSSI bears the burden of establishing that any alterations in the work were so drastic that it effectively required the contractor to perform duties materially different from those originally bargained. As we establish below, MSSI has not met its burden of proof because the present contract, as modified, does not

differ materially from the original award.

CICA requires executive agencies, when procuring property or services, to "obtain full and open competition through the use of competitive procedures." 41 U.S.C. § 253 (a)(1)(A). CICA, however, does not prevent modification of a contract by requiring a new competition for every change that adds work to a contract. AT&T Communications, Inc. v. Wiltel, 1 F.3d 1201, 1204 (Fed. Cir. 1993). Rather, only modifications that fall outside the objective of the original competed contract and that are different in kind from the original contract fall under the statutory competition requirement. AT&T, 1 F.3d at 1204; Melville Energy Systems, Inc. v. United States, 33 Fed. Cl. 616, 618 (1995).

The breadth of the original contract dictates the permissible scope of modifications. Because determination of whether a modification effects a cardinal change focuses on the scope of the original contract, "a broad original competition may validate a broader range of later modifications without further bid procedures." AT&T, 1 F.3d at 1205. This is particularly the case where the original contract contemplates modifications over a period of time. Id.

In CW Government Travel v. United States, 61 Fed. Cl. 559, 574 (2004), the Court reaffirmed the principle that, in addressing a challenge to a modification under CICA, the Court should consider whether original bidders "would have expected a modification to fall within the contract's changes clause." Thus, the question is whether a reasonable bidder might have "anticipated that it could also be called upon under the changes clause to provide" that service. Id. (emphasis added); see also HDM Corp. v. United States, 69 Fed. Cl. 243, 257 (2005) (finding no material change for CICA purposes where a reasonable offeror would have expected changes to fall within contract's changes clause); Cardinal Maintenance, Inc. v. United States, 63 Fed. Cl.

98, 107 (2004) (modification effected cardinal change because the changes were not "of the type that were specifically authorized or even foreseen in the original contract"). The starting point for analysis of whether the modification at issue effected a cardinal change are the terms of the original contract. 61 Fed. Cl. at 571-72.

The purpose of the Contract is to provide help desk services for the business areas, systems and subsystems that fall within HUD's Real Estate Assessment Center ("REAC") within the Office of Public and Indian Housing. A.R. 14. Section C.1.2., entitled "Purpose," provides:

> 1.2. Purpose
> The purpose of this contract is to:
> 1.1.1. Operate a TAC Hotline from 7:00 AM to 8:30 PM EST Monday through Friday, excluding Government holidays and certain times when the TAC is closed for the convenience of the Government.
> 1.2.1. Provide assistance by answering general program status and technical questions from inspectors, HUD Field Offices, housing authorities, management agents, residents, sponsors, other HUD and government officials and the general public.
> 1.2.2. Answer questions about PIH-REAC business processes and resolve problems users may experience with PIH-REAC systems.
> 1.2.3. Support communications with program participants in selected business areas.

A.R. 14.

Modification 9 did not alter this purpose of the Contract. The PIC, the program formerly served by MSSI, is part of REAC. A.R. 3. In fact, pursuant to the original contract, CCSI frequent received and responded to PIC-related inquiries. Id. Therefore, adding PIC help desk services to the Contract did not materially alter the Contract.

In addition, Section C.3.2 of the original Contract expressly provided that "HUD may subsequently include additional programs and processes as deemed necessary to operate a TAC

[Technical Assistance Center, i.e., help desk]. A.R. 16. Because Modification 9 is consistent with, and anticipated by, this provision of the Contract, it does not materially change the Contract.[2]

To summarize, the nature and purpose of the Contract for REAC call services have not been changed by Modification 9. Modification 9 simply adds call center support for an additional subsystem of the REAC program. Therefore, the modification does not constitute a cardinal change and the CICA stay does not apply.

## II. HUD's Determination That An Override Of The CICA Stay Is In the Best Interests Of The United States Was Not Arbitrary Or Capricious

Even if the Court determines that the CICA does apply to this protest of a modification to an existing contract, MSSI is not entitled to any relief. HUD's alternative determination that an override of the CICA stay is in the best interests of the United States was not arbitrary or capricious, and therefore should not be invalidated.

### A. The Substantive "Arbitrary And Capricious" Standard

In a procurement-related challenge, the Court assesses the agency's decision pursuant to the review standard of the Administrative Procedure Act, 5 U.S.C. § 706(2), as incorporated by the Tucker Act, 28 U.S.C. § 1491(b)(4). RAMCOR Servs. Group, Inc. v. United States, 185

[2] The other changes in Modification 9 were also non-material. Prior to Modification 9, the Statement of Work listed 12 particular tasks. A.R. 18-22. The Modification added two tasks, which are administrative in nature. A.R. 88-89, Tasks 13 and 14. Generally, Task 13 requires that the contractor organize and keep minutes of teleconferences between PIH Headquarters staff and HUD field PIC coaches. Task 14 requires that the contractor monitor certain PIC online forums and provide routine help desk services for any online questions. The initial 12 tasks set forth in the Contract were not modified.

F.3d 1286, 1291 (Fed. Cir. 1999). Thus, MSSI must "prov[e] that the override decision here was arbitrary and capricious." PGBA, LLC v. United States, 57 Fed. Cl. 655, 660 (2003).

Application of the arbitrary and capricious standard involves neither judicial fact finding, nor review of the agency's factual statements for "substantial evidence." See Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000) (citing Camp v. Pitts, 411 U.S. 138, 140 (1973)). Rather, the Court will sustain an agency decision "evincing rational reasoning and consideration of relevant factors." Id. at 1058 (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., 419 U.S. 281, 285 (1974)). The Court should ask whether there has been "a clear error of judgment," without substituting its own judgment for that of the agency. E.g., Co-Steel Raritan, Inc. v. ITC, 357 F.3d 1294, 1309 (Fed. Cir. 2004). Consequently, in the context of this action, the Court should simply assess whether the written determination and finding of HUD's Director of Field Contracting Operations supplies "a rational basis" for the agency's determination to continue contract performance. Chapman Law Firm Co. v. United States, 62 Fed. Cl. 464, 466 (2004).

**B. The Standard For Preliminary Injunctive Relief**

Injunctive relief for a disappointed bidder is appropriate "only in extremely limited circumstances." CCL Serv. Corp. v. United States, 48 Fed. Cl. 113, 120 (2000) (quoting CACI, Inc. v. United States, 719 F.2d 1567, 1581 (Fed. Cir. 1983)). In order to obtain a preliminary injunction, a plaintiff must carry the burden of establishing entitlement to this extraordinary relief by clear and convincing evidence based upon the following factors: (1) a likelihood of success on the merits; (2) that the plaintiff will suffer irreparable injury if injunctive relief is not granted; (3) that, if the injunction is not granted, the harm to the plaintiff will outweigh the harm to the

Government and third parties; and (4) that granting the injunction serves the public interest. Bean Stuyvesant, L.L.C. v. United States, 48 Fed. Cl. 303, 320-21 (2000); PGBA, 57 Fed. Cl. at 657. But see Bannum, Inc. v. United States, 60 Fed. Cl. 718, 723-24 (2004) (applying a preponderance of the evidence standard). The decision whether to grant an injunction is within the sound discretion of the trial court. FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993).

### C. MSSI's Request For Preliminary Injunctive Relief Should Be Denied

Pursuant to 31 U.S.C. § 3553(d)(3)(C), an agency may override the automatic stay upon a written finding that:

> performance of the contract is in the best interests of the United States; or
>
> urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest.

31 U.S.C. § 3553(d)(3)(C)(I); see also 48 C.F.R. § 33.104(c)(2). In this case, HUD overrode the stay pursuant to the "best interests" provision of the statute. A.R. 237. Although a finding pursuant to either provision allows an agency to override an automatic stay, the standard of review for a "best interests" determination differs from that of an "urgent and compelling circumstances" determination.

CICA grants an agency significant discretion in choosing to override an automatic stay. Indeed, by enacting section 3553(d)(3)(C), Congress granted agencies even greater discretion in overriding automatic stays in the post-award context than in the pre-award context. Pursuant to 31 U.S.C. § 3553(c)(2), an automatic stay entered prior to contract award may be overridden only "upon a writing finding that urgent and compelling circumstances which significantly affect

interests of the United States will not permit waiting for the decision of the Comptroller General." 31 U.S.C. § 3553(c)(2)(A). In post-award actions, by contrast, an agency has the additional option of overriding an automatic stay upon the more subjective finding that "performance of the contract is in the best interests of the United States." 31 U.S.C. § 3553(d)(3)(C)(i)(I). Post-award, a finding of "urgent and compelling circumstances" is not required. Id. In granting agencies the additional option of overriding an automatic stay when it is in the best interests of the United States, Congress recognized that the circumstances requiring an override may vary widely, and it granted agencies substantial discretion in making that determination.

### 1. HUD's Determination and Findings Are Rational And Lawful And, Therefore, MSSI Has Failed To Demonstrate A Likelihood Of Success On The Merits

An agency's decision may be arbitrary and capricious where the agency: (1) "has relied on factors which Congress has not intended it to consider;" (2) "entirely failed to consider an important aspect of the problem;" (3) "offered an explanation for its decision that runs counter to the evidence before the agency;" or (4) if the decision "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Assoc. of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 42 (1983). Those flaws are absent from the written finding under review.

HUD's findings and determinations cited several sufficient reasons for overriding the stay, including: (1) the need to provide help desk services for the benefit of persons in need of safe housing (A.R. 1); (2) the fact that CCSI was already performing almost identical help desk functions (A.R. 2); (3) cost savings of $1,113,557 for the first year of performance by CCSI

(A.R. 3); (4) MSSI's breach of its duty to implement a transition plan pursuant to its expiring contract (A.R. 3); and (5) MSSI's financial condition (A.R. 5).

MSSI has not challenged any of these determinations as being arbitrary or capricious. Instead, MSSI's complaint and motion assert two theories, one erroneous and the other irrelevant. The first theory is that "HUD's override decision is not made by the Head of the Procuring Activity, and there has been no finding that performance under Modification Number M00009 to Contract Number C-DEN-02014 is 'in the best interests of the United States . . . ." Compl. at ¶¶ 14-16. This theory is simply mistaken. See A.R. 1-6.

MSSI's second and irrelevant theory is that the process leading to the modification was flawed because SBA allegedly did not act in compliance with regulations in approving Modification No. 9. Compl. at ¶¶ 17-20. We deny that SBA erred, and will address plaintiff's theory in full if the merits of MSSI's protest come before the Court at a future date. At this time, however, the only issues before the Court are whether the CICA stay applies and, if so, whether HUD's override decision was arbitrary or capricious. MSSI may not use this CICA override protest to litigate the merits of the underlying protest, which is still pending before GAO.

### 2. The Balance Of Harms And The Public Interest Compel The Denial Of Injunctive Relief

The balance of harms and the public interest also warrant a denial of preliminary injunctive relief. Indeed, no irreparable harm to MSSI would flow from a denial of injunctive relief, whereas the harm to United States from an injunction would be substantial and virtually immediate. The Court should, therefore, deny MSSI's request for a preliminary injunction. PGBA, 57 Fed. Cl. at 657; Overstreet Elec. Co., Inc. v. United States, 59 Fed. Cl. 99, 109 (2003)

(listing equitable factors and noting "[c]ourts interfere with the government's procurement process only in extremely limited circumstances").

MSSI fails to establish that it would suffer any irreparable injury from a denial of preliminary injunctive relief. MSSI's main argument seems to be that it will be deprived of the contract it would like to perform. "Normally, an injury is not considered 'irreparable' if the only injury alleged is monetary loss." Chapman Law Firm Co. v. United States, 67 Fed. Cl. 188 (2005) (sustaining override). Loss of business is not irreparable harm. "In every procurement award there are generally more losers than winners. To find that a losing procurement participant suffers irreparable harm merely because it did not succeed with its contract proposal would create in the losing party an automatic right to injunctive relief." San Diego Beverage & Kup v. United States, 997 F. Supp. 1343, 1347 (S.D. Cal. 1998).

It is undisputed that the modification will result in cost savings to the Government. If the stay is reinstated, the agency may be forced to issue new purchase orders to MSSI at significantly greater expense. The financial harm to the Government equals or outweighs the harm to MSSI. For the same reasons, the public interest also warrants denying injunctive relief.

## CONCLUSION

For these reasons, we respectfully request that the Court deny MSSI's motion for a preliminary injunction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Roger A. Hipp
ROGER A. HIPP
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L St., N.W.
Attn: Class. Unit - 8th Fl.
Washington, D.C. 20530
Tel.: (202) 305-3091

January 9, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on January 9, 2007, a copy of foregoing "DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Roger A. Hipp