**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| MANAGEMENT SOLUTIONS & SYSTEMS, INCORPORATED, | |
| Plaintiff | Case No. 07-7 |
| | Judge Susan G. Braden |
| v. | |
| THE UNITED STATES | |
| Defendant | |

**INTERVENOR'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Creative Computing Solutions, Inc. ("CCSI"), through undersigned counsel, files this memorandum of points and authorities in opposition to the Plaintiff's Motion for Judgment on the Administrative Record and in support of the Defendant's Cross-Motion for Judgment on the Administrative Record.

**I.    PROCEDURAL BACKGROUND**

The Plaintiff's complaint in this action contains two counts: (i) that HUD's override decision dated December 29, 2006 issued in connection with Plaintiff's bid protest filed on or about December 6, 2006 with the Government Accountability Office, B-299235 ("GAO Protest"), was arbitrary, capricious and in violation of law; and (ii) that the award of Modification No. M0009 ("Modification") to CCSI under Contract No. C-DEN-02014 was made without the SBA having conducted an "adverse impact" analysis under SBA Regulation 13 C.F.R. §124.504.  *See* Plaintiff's Post-Award Procurement Protest Complaint, ¶¶ 14-20.

As a result of the dismissal of GAO Protest, and an ensuing Motion to Dismiss filed by Defendant, United States Department of Housing and Urban Development ("HUD"), the first count of the Complaint was dismissed and is no longer before the Court. The only remaining claim is this case is Plaintiff's contention that the issuance of the Modification to CCSI was improper because an "adverse impact" analysis was not undertaken by the Small Business Administration ("SBA").

The relevant facts in Administrative Record are set forth in detail in the brief filed in this action by HUD, and therefore, will not be restated here.

## II.   ARGUMENT

CCSI's motion to intervene in this action was granted by Order dated January 9, 2007. As an Intervenor in this action, CCSI offers the following argument in opposition to Plaintiff's pending motion for judgment and in support of HUD's pending cross motion.

### A.   The SBA Was Not Required to Make a Second "Adverse Impact" Determination Under CCSI's Contract

Plaintiff acknowledges that prior to HUD's award to CCSI of Contract No. C-DEN-02014 on or about September 28, 2005, the SBA engaged in an "adverse impact" analysis pursuant to SBA regulation 13 C.F.R. §124.504(c), and specifically, SBA found that there was no adverse impact on small businesses by virtue of the award of the Contract to CCSI. Plaintiff, however, contends that SBA was required to engage in a *second* "adverse impact" analysis before issuing Modification No. M0009 to that very same Contract. This second adverse impact analysis was not required as a matter of law.

The SBA's "adverse impact" regulation provides, in pertinent part:

> **§ 124.504   What circumstances limit SBA's ability to accept a procurement for award as an 8(a) contract?**
>
> SBA will not accept a <u>procurement</u> for award as an <u>8(a) contract</u> if the circumstances identified in paragraphs (a) through (d) of this section exist.
>
> (c)   *Adverse impact.*  SBA has made a written determination that acceptance of the procurement for 8(a) award would have an adverse impact on an individual small business, a group of small businesses located in a specific geographical location, or other small business programs . . . .
>
>> (1) In determining whether the acceptance of a requirement would have an adverse impact on an individual small business, SBA will consider all relevant factors.
>>
>>> (i)   In connection with the specific small business, SBA presumes adverse impact to exist where:
>>>
>>>> (A)   The small business concern has performed the specific requirement for at least 24 months;
>>>>
>>>> (B)   The small business is performing the requirement at the time it is offered to the 8(a) BD program, or its performance of the requirement ended within 30 days of the procuring activity's offer of the requirement to the 8(a) BD program; and
>>>>
>>>> (C)   The dollar value of the requirement that the small business is or was performing is 25 percent or more of its most recent annual gross sales (including those of its affiliates).  For a multi-year requirement, the dollar value of the last 12 months of the requirement will be used to determine whether a small business would be adversely affected by SBA's acceptance.

13 C.F.R. §124.504(c) (emphasis added).

By its plain language, the regulation only requires an adverse impact analysis when a "procurement" is offered and accepted for award as an 8(a) contract.

SBA regulations address the procedure for offering and accepting a procurement into the 8(a) program:

> **§ 124.502   How does an agency offer a procurement to SBA for award through the 8(a) BD Program?**
>
> (a)   A procuring activity contracting officer indicates his or her formal intent to award a procurement requirement as an 8(a) contract by submitting a written offering letter to SBA.
>
> * * *
>
> **§ 124.503   How does SBA accept a procurement for award through the 8(a) BD Program?**
>
> (a)   Acceptance of the requirement.  Upon receipt of the procuring activity's offer of a procurement requirement, SBA will determine whether it will accept the requirement for the 8(a) BD program.  SBA's decision whether to accept the requirement will be sent to the procuring activity in writing within 10 working days of receipt of the written offering letter if the contract is valued at more than the simplified acquisition threshold, and within two days of receipt of the offering letter if the contract is valued at or below the simplified acquisition threshold, unless SBA requests, and the procuring activity grants, an extension.  SBA is not required to accept any particular procurement offered to the 8(a) BD program.

13 C.F.R. §124.502 and §124.503.

As is evident, the SBA's adverse impact regulations are only triggered when a separate "procurement" is offered to the 8(a) program by a "written offering letter" from the procuring agency to the SBA, and SBA is considering acceptance of that procurement into the 8(a) program.

HUD's issuance of Modification No. M0009 to CCSI clearly did not trigger the adverse impact regulation.  There was no "written offering letter" by HUD or written acceptance of such offer by SBA of a "procurement" into the 8(a) program.  Rather, HUD issued an in-scope Modification under a contract that had already been accepted into, and was being performed

under, the 8(a) program. In the absence of an offering letter and SBA acceptance in accordance the above regulations, the issuance of the Modification was not a separate procurement subject to the adverse impact analysis. *See Size Appeals of SETA Corporation*, SBA SIZ-2001-06-01-07 (2002) ("In order for a procurement to be an 8(a) procurement, the procuring agency must offer it to SBA, and SBA must accept it into the program.") It is also of consequence that the SBA did not consider this Modification to constitute a separate "8(a) procurement" that would trigger the adverse impact regulation. SBA's interpretation of its own regulations should be given weight. *See Size Appeal of Uniband, Inc.*, SBA No. SIZ-4326, at 8 (1998).

This conclusion is further supported by the fact that the subject Modification was clearly within the scope of the Statement of Work contained in CCSI's Contract. In several briefs in this case, HUD has demonstrated, in considerable detail, how the work under Modification No. M0009 clearly falls within the scope of the Contract's Statement of Work. *Plaintiff's motion and supporting brief do not challenge this conclusion*. There is no dispute, therefore, that this is an "in-scope" expansion of an existing 8(a) contract to add work previously contemplated under the Statement of Work.

At best, Plaintiff suggests that a new adverse impact determination is required each time an 8(a) contract is modified to add "in-scope" work that might arguably fall within the scope of some other small business set-aside contract. As discussed above, this argument is without merit, as a matter of law. Further, given the increasing use of IDIQ-type and multiple award contracts, and the expansive statements of work under many of those contract vehicles, Plaintiff's argument, if accepted, would open the flood gates of "adverse impact" litigation and wreak havoc in the administration of 8(a) contracts. Plaintiff's interpretation is contrary to the regulatory language as well as the spirit and intent of the regulation.

5

### B. Plaintiff's Motion for Judgment on the Administrative Record Violates RCFC 52.1(b).

Plaintiff has filed a motion for judgment on the Administrative Record under RCFC 52.1(b), which provides that, unless the court orders otherwise, the moving party must include a statement of facts that "draws upon and cites to" the portions of the administrative record that bear on the issues presented to the court.

However, Plaintiff's motion violates this rule by making numerous references to facts that are not found in the Administrative Record. Most significantly, in an apparent effort to show that it was prejudiced by the lack of an adverse impact analysis, Plaintiff makes numerous references to its historical sales and revenue figures that were very briefly discussed during the override decision hearing before this court on January 10, 2007. (SBA's adverse impact regulation provides for a presumption of adverse impact if, among other things, the work at issue constituted 25 percent or more of its most recent annual gross sales. *See* 13 C.F.R. §124.504(c)(1)(i)(C).) In so doing, Plaintiff repeatedly cites to the "Transcript of Proceedings" dated January 10, 2007. However, the transcript that hearing (which was held for the purpose of evaluating HUD's override decision, and not the merits of Plaintiff's adverse impact claim) is not part of the Administrative Record, nor has Plaintiff moved for its inclusion in the Record.

By citing to facts outside of the Administrative Record, Plaintiff attempts to sand-bang the other parties. Had Plaintiff wished to have the court consider facts outside of the Administrative Record, it should have notified the court and the parties during the most recent scheduling conference that it wished to proceed with a motion for summary judgment under RCFC 56. Had CCSI been so notified, it would have had the opportunity to engage in discovery with Plaintiff and others and acquire evidence to challenge, among other things, the sales and revenue figures briefly discussed by MSSI's president at the January 10 hearing. In addition,

6

had Plaintiff moved under RCFC 56, HUD and CCSI would have had the opportunity to submit affidavits to counter Plaintiff's factual allegations.[1]

For these reasons, all assertions in Plaintiff's Statement of Facts that cite to the "Transcript of Proceedings" should be stricken from Plaintiff's motion and disregarded by the court. These assertions include Statements of Fact Nos. 7, 9, 13 (second paragraph, last sentence), 14 (second sentence) and 17. Because these stricken allegations encompass the only information presented by Plaintiff to show that it was prejudiced by the lack of an adverse impact analysis (i.e., the sales and revenue figures mentioned by MSSI's president), Plaintiff's adverse impact claim must fail for lack of prejudice.[2]

Many of plaintiff's other "Statements of Fact" in support of its motion also fail cite to the Administrative Record, as required by RCFC 52.1(b). These include assertions made in Statements of Fact Nos. 1 (second paragraph), 2-5, 6 (second paragraph, second sentence), 7, 9, and 11 (third and forth sentences). Each of these assertions should be stricken from Plaintiff's motion and disregarded by the court as well.

### C. Plaintiff's Prayer for Injunctive Relief in its Complaint is Moot, and Therefore, the Complaint Fails to State Claim Upon Which Relief Can be Granted.

In its motion, Plaintiff requests that judgment on the Administrative Record be entered in its favor, and that: (i) the Court declare that the Modification is unlawful because SBA did not

---

[1] Plaintiff should not be excused from these irregularities. Plaintiff chose not to seek discovery or supplement the Administrative Record for what are purely business reasons, i.e., to obtain a decision on the merits as quickly as possible given its pending bankruptcy litigation.

[2] The sales figures introduced by MSSI during the January 10, 2007 hearing were unaccompanied by any backup. The parties did not cross-examine MSSI's president because it was understood by all that the purpose of the hearing was to review the override decision and not consideration of the merits of the adverse impact claim. Indeed, the Court stated during the hearing that "all of this is really irrelevant to what we are doing here today in terms of whether the stay is adequate under the law," "I'm not determining here the merits of the protest," and "I have enjoyed hearing about the company and what you've done and all of that, but it's not really part of the focus here. Okay? That's a different place. You have to go somewhere else for that." Transcript of Proceedings, at 22-23.

perform an "adverse impact" analysis under 13 C.F.R. §124.504(c); and (ii) the Court issue an "Order compelling the prompt termination of Modification Number M0009 to 8(a) Subcontract Number C-DEN-02014," i.e., an injunction prohibiting further performance of the Modification by CCSI.  *See* Plaintiff's Brief in Support of Plaintiff's Motion for Judgment on the Administrative Record, at 12.

However, Plaintiff's request for injunctive relief extends beyond the relief requested by Plaintiff in the Post-Award Procurement Protest Complaint ("Complaint").  The Complaint's "Prayer for Relief" seeks: (i) a declaration that the override decision was unlawful; (ii) a declaration that "the transfer to CCSI of the help desk support services being delivered by MSSI" was unlawful because the SBA has not engaged in an "adverse impact" analysis; and (iii) a permanent injunction staying performance of the Modification "until such time as the United States Government Accountability Office has decided the matter before it in B-299235."  *See id.,* Prayer for Relief, at 14.

The Government Accountability Office ("GAO"), however, has dismissed MSSI's protest in B-299235.  Therefore, Plaintiff's prayer for an injunction "*until such time as the United States Government Accountability Office has decided the matter before it in B-299235*" is moot.  The Complaint does not seek an Order enjoining CCSI's performance of the Modification after the GAO protest has been decided, and Plaintiff has not moved to amend the Complaint in accordance with RCFC 15.  Plaintiff's request for an injunction at this point, therefore, is outside of the four corners of the Complaint, and may not be granted.

### III. <u>CONCLUSION</u>

For all of the foregoing reasons, CCSI respectfully requests that the Plaintiff's Motion for Judgment on the Administrative Record be denied in its entirety, and that the Defendant's Cross Motion for Judgment on the Administrative Record be granted.

March 5, 2007								Respectfully submitted,


										/s/

										Andrew P. Hallowell, Esq.
										Pargament & Hallowell, PLLC
										1776 K Street, N.W., Suite 825
										Washington, DC  20006
										(202) 775-0707 (v)
										(202) 775-0733 (f)