IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

| | | |
|---|---|---|
| MANAGEMENT SOLUTIONS & SYSTEMS, INCORPORATED, | ) | |
| Plaintiff, | ) | No. 07-7C |
| v. | ) | (Judge Braden) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND DEFENDANT'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

Defendant, the United States, respectfully submits the following brief in opposition to the motion for judgment upon the administrative record filed by plaintiff, Management Solutions & Systems, Inc. ("MSSI"), and cross-moves, pursuant to Rule 52.1(b) of the Rules of this Court ("RCFC"), for judgment upon the administrative record. In support of this cross-motion, we rely upon the administrative record and the statement of facts that we are filing concurrently with this motion.

## STATEMENT OF THE ISSUES

(1) Whether the Small Business Administration ("SBA") was required to make an adverse impact determination prior to issuance of Modification 9 to Contract No. C-DEN-02014 (the "CCSI Contract").

(2) Whether MSSI's motion for judgment upon the administrative record must fail because it relies upon allegations and evidence outside the administrative record.

## STATEMENT OF FACTS

For our statement of the facts, we refer the Court to our statement of facts filed concurrently with this motion.

## ARGUMENT

### I. The Court Should Grant Judgment To The Government Because The Small Business Administration Was Not Required To Make Adverse Impact Determinations For Modifications Within The Scope Of An Existing Contract

MSSI's motion is based upon the erroneous premise that SBA was required to make an adverse impact determination pursuant to 13 C.F.R. § 124.504 before the Department of Housing and Urban Development ("HUD") could modify Contract No. C-DEN-02014 (the "CCSI Contract"). Pl. Br. at 9-11. By its own terms, however, the adverse impact determination requirement of 13 C.F.R. § 124.504 applies only to SBA's decision whether to "accept a procurement for award," after SBA has received an "offer of a procurement requirement" pursuant to 13 C.F.R. § 124.503. Where, as here, an existing contract is modified within the scope of that contract, there is no new "offer" to be "accept[ed]" by SBA, and therefore 13 C.F.R. §124.504 does not apply.

In addition, another regulation expressly states that SBA's consent to a contract modification is not required if: (1) SBA has delegated contract administration to the procuring agency; and (2) the modification is within the scope of the original contract. This rule is set forth in 13 C.F.R. § 124.512, which provides:

> (a) SBA may delegate, by the use of special clauses in the 8(a) contract documents or by a separate agreement with the procuring activity, all responsibilities for administering an 8(a) contract to the procuring activity except the approval of novation agreements under 48 CFR 42.302(a)(25).

> (b) This delegation of contract administration authorizes a contracting officer to execute any priced option or in scope modification without SBA's concurrence. The contracting officer must, however, notify SBA of all modifications and options exercised."

SBA delegated administration of CCSI's contract to HUD. In its letter dated September 28, 2005, SBA authorized HUD to negotiate and execute a contract with CCSI. A.R. 11.[1] The letter also states: "The servicing SBA District Office, shall upon request, be available to assist the program participant in contract administration." It is clear from this sentence that SBA delegated contract administration to HUD. SBA did not reserve any contract administration authority for itself. Any role SBA might have in contract administration would be limited to providing "assist[ance]" to HUD "upon request." Having been delegated contract administration authority pursuant to subsection (a) of 13 C.F.R. § 124.512, HUD was authorized to issue an in-scope modification pursuant to subsection (b) of that regulation.

The phrase "in scope modification" is not defined by SBA regulations or the statutes upon which they are based, and we are not aware of any case that has construed the term as specifically used in 13 C.F.R. § 124.512. However, the Court of Appeals for the Federal Circuit has held in other contexts that "[a] modification generally falls within the scope of the original procurement if potential bidders would have expected it to fall within the contract's changes clause." AT&T Communications, Inc. v. Wiltel, 1 F.3d 1201, 1204 (Fed. Cir. 1993). In AT&T, the Federal Circuit held that the concepts of "modification within the scope" and "cardinal change," which were originally developed as tests of whether a modification constitutes breach

---

[1]"A.R. ___" refers to the administrative record filed in this case.

of contract, should also be used to determine whether a modification was significant enough to trigger the Competition in Contracting Act. Id.

The logic of AT&T applies to this case as well. As in AT&T, the Court must determine whether the modification of the CCSI Contract was within the scope of the contract. As in AT&T, the relevant body of law to draw upon is the well-established law of what constitutes a "modification within the scope," as opposed to a "cardinal change." In AT&T, the Federal Circuit cited various formulations of the test, including whether "the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for," and "whether a modification exceeds the scope of the contract's changes clause." 1 F.3d at 1205. The Federal Circuit also noted that "[a]n important factor in determining the scope of the original competition is 'whether the solicitation for the original contract adequately advised offerors of the potential for the type of changes during the course of the contract that in fact occurred, or whether the modification is of a nature which potential offerors would reasonably have anticipated.'" 1 F.3d at 1205 (quoting Neil R. Gross & Co. 69 Comp. Gen. 247 (1990)).

In CW Government Travel v. United States, 61 Fed. Cl. 559, 574 (2004), the Court reaffirmed the principle that, in determining whether a modification is within the scope of the contract, the Court should consider whether original bidders "would have expected a modification to fall within the contract's changes clause." Thus, the question is whether a reasonable bidder might have "anticipated that it could also be called upon under the changes clause to provide" that service. Id. (emphasis added); see also HDM Corp. v. United States, 69 Fed. Cl. 243, 257 (2005) (finding no material change where a reasonable offeror would have

expected changes to fall within contract's changes clause); Cardinal Maintenance, Inc. v. United States, 63 Fed. Cl. 98, 107 (2004) (modification effected cardinal change because the changes were not "of the type that were specifically authorized or even foreseen in the original contract"). The starting point for analysis of whether the modification at issue effected a cardinal change are the terms of the original contract. 61 Fed. Cl. at 571-72.

The purpose of the CCSI Contract is to provide help desk services for the business areas, systems and subsystems that fall within HUD's Real Estate Assessment Center ("REAC") within the Office of Public and Indian Housing. A.R. 14. Section C.1.2., entitled "Purpose," provides:

> 1.2. Purpose
> The purpose of this contract is to:
> 1.1.1. Operate a TAC Hotline from 7:00 AM to 8:30 PM EST Monday through Friday, excluding Government holidays and certain times when the TAC is closed for the convenience of the Government.
> 1.2.1. Provide assistance by answering general program status and technical questions from inspectors, HUD Field Offices, housing authorities, management agents, residents, sponsors, other HUD and government officials and the general public.
> 1.2.2. Answer questions about PIH-REAC business processes and resolve problems users may experience with PIH-REAC systems.
> 1.2.3. Support communications with program participants in selected business areas.

A.R. 14.

Modification 9 did not alter this purpose of the CCSI Contract. The Public and Indian Information Center ("PIC"), the program formerly served by MSSI, is part of REAC. A.R. 3. In fact, pursuant to the original contract, CCSI frequently received and responded to PIC-related inquiries. Id. Therefore, adding PIC help desk services to the CCSI Contract did not materially alter the CCSI Contract.

In addition, Section C.3.2 of the original CCSI Contract expressly provided that "HUD may subsequently include additional programs and processes as deemed necessary to operate a TAC [Technical Assistance Center, i.e., help desk]. A.R. 16. Because Modification 9 is consistent with, and anticipated by, this provision of the Contract, it does not materially change the Contract.[2]

To summarize, the nature and purpose of the CCSI Contract for REAC call services were not changed by Modification 9. Modification 9 simply added call center support for an additional subsystem of the REAC program.

For the above reasons, the Court should grant judgment upon the administrative record to the Government, and deny MSSI's motion for judgment upon the administrative record.

II. MSSI's Motion For Judgment Upon The Administrative Record Must Fail Because It Relies Upon Allegations And Evidence Outside The Administrative Record

In the event that the Court does not grant judgment to the Government for the reasons discussed in the preceding section, the Court should nonetheless deny plaintiff's motion because it relies upon allegations and evidence that are not part of the administrative record. MSSI's motion was filed pursuant to RCFC 52.1, which allows a party to move for judgment based upon the administrative record that has been filed with the Court. MSSI's statement of facts and brief are replete with citations to matters outside the administrative record, including testimony and

[2] The other changes in Modification 9 were also non-material. Prior to Modification 9, the Statement of Work listed 12 particular tasks. A.R. 18-22. The Modification added two tasks, which are administrative in nature. A.R. 88-89, Tasks 13 and 14. Generally, Task 13 requires that the contractor organize and keep minutes of teleconferences between PIH Headquarters staff and HUD field PIC coaches. Task 14 requires that the contractor monitor certain PIC online forums and provide routine help desk services for any online questions. The initial 12 tasks set forth in the Contract were not modified.

exhibits offered at the hearing held on January 10, 2007.

For example, MSSI has cited hearing testimony and exhibits concerning the amount of sales it derived from Contract No. C-OPC-22140. Pl. Statement of Facts ¶ 7; Pl. Br. at 3-4, 10. The allegation that MSSI derived more than 25 percent of its gross sales from Contract No. C-OPC-22140 is essential to MSSI's claim that 13 C.F.R. § 124.504 required an adverse impact analysis. Pl. Br. at 10. However, MSSI's sales records are not part of the administrative record, because such records were neither before the agency nor relied upon in arriving at the determination that MSSI now protests. Its sales records therefore cannot be cited in connection with an RCFC 52.1 motion. Because MSSI has failed to prove this critical allegation with evidence from the administrative record, its motion for judgment upon the administrative record must fail.

## CONCLUSION

For the reasons set forth above, we respectfully request the Court to enter judgment upon the administrative record in favor of the United States and against MSSI.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Roger A. Hipp
ROGER A. HIPP
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L St., N.W.
Attn: Class. Unit - 8th Fl.
Washington, D.C. 20530
Tel.: (202) 305-3091

March 5, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on March 5, 2007, a copy of foregoing "DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND DEFENDANT'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Roger A. Hipp